J-A11027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.R.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: P.S., NATURAL FATHER | : : : : : : : | |
| | : | No. 2037 MDA 2019 |

Appeal from the Decree Entered November 14, 2019
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8803

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 01, 2020**

P.S. ("Father") appeals from the decree terminating his parental rights to N.R.S. ("Child"). Father argues the trial court erred in finding the Luzerne County Children and Youth Services ("CYS") proved by clear and convincing evidence that grounds for termination existed and that termination would be in Child's best interest. We affirm.

Child was born in August 2014. In September 2016, the Wilkes-Barre City police took Child into custody because Child's mother attempted to purchase heroin. Mother was arrested and charged with child endangerment and possession of drug paraphernalia. Father did not reside with Child and Mother at the time of placement, and Father had not seen Child since Child was six months old. Mother died in July 2017, while incarcerated.

_____

[*] Former Justice specially assigned to the Superior Court.

In November 2018, CYS filed a petition to terminate the parental rights of Father. The court held a hearing. CYS caseworker Cindy Jones testified. Jones testified that CYS contacted Father in 2016, when Child was initially placed. N.T., 6/27/19, at 4-5. After "quite a lapse in time," Father contacted the agency. *Id.* at 5. Jones stated that Father attended a hearing in March 2018, and the court ordered six hours of visitation per week. *Id.* Father, however, did not engage in the visitation. Father said he was unable to participate in the visits because of the distance, as he resided in New York. *Id.* CYS offered him a 30-day bus pass, which he used one time. *Id.* Jones testified that Father had seven visits with Child from September 2016 until the date of the hearing, with six of those visits occurring prior to the filing of the termination petition. *Id.* at 6. In the six months preceding the filing of the petition, Father had one visit with Child. *Id.* Jones further testified that she spoke with Father to suggest he increase his contact with Child. *Id.* She set up a visitation schedule, referred Father to Vision Quest, so that visits could occur on weekends, and suggested phone calls, letters, and FaceTime. *Id.* Father made some phone calls, but was not consistent, and sent one letter in April 2019. *Id.* at 6-7. Jones testified that Father has not demonstrated that he could parent Child and has not taken a parenting role in Child's life. *Id.* at 7. He has not provided financial support, provided any gifts, has sent only one letter, and has not been in contact to check on Child's well-being. *Id.* 7-8.

On cross-examination, Jones testified that Father consistently attended the hearings from March 2018 through the current hearing, coming from New

York to attend. *Id.* at 10. CYS utilized the Interstate Compact on the Placement of Children and contacted the corresponding agency in New York. However, Father was denied as a resource due to his criminal history and insufficient financial means. *Id.* at 14. Jones stated that Father's telephone calls "increased leading up to [the] hearing, however, there were gaps in time when he did not call." *Id.* at 17.

Jones further testified that she observed Father's visits with Child. *Id.* at 18. She stated that Child "is a pretty easygoing kid so he didn't have any problem engaging in a visitation with his father." *Id.* She said the visits were appropriate "in that there's no safety concerns," but that Father was not very affectionate with Child and made "some empty promises, that he's going to call every day or every other day." *Id.* at 20. Jones further stated that Father was cooperative with CYS and she did not have trouble reaching him after she obtained his current address. *Id.* at 19.

Jones testified that Child has resided with his foster parents and siblings, and that the foster parents wish to adopt him. *Id.* at 36-37. She said Child was familiar with the foster family's extended family, and the family has pictures of Child in the home. *Id.* at 37. She testified the foster parents provide Child with a comfortable home environment, he has adequate food and appropriate clothing, and sees the doctor for well and sick visits. *Id.* Foster parents also provide emotional support for Child. *Id.*

Jones further testified that Child was comfortable with Father and would play during visits, but she does not believe a parental bond exists between

Father and Child. *Id.* at 38. She testified that she observed Child with foster parents about once per month, and believes there is a parental bond. *Id.* at 38. She said, "The bond between the foster family and [Child] is a much stronger bond, a bond of a parent with a child. And the relationship with [Father] is he's comfortable with him and he's like a family friend." *Id.* at 38-39. Jones did not believe Child would suffer any detrimental effect if Father's parental rights were terminated. *Id.* at 39.

Father testified that he did not know CYS was involved with Child until Child's mother passed away in July 2017. *Id.* at 21. He testified the bus trips to visit with Child were "a little uncomfortable." *Id.* at 22. He stated it was not uncomfortable because of "the trip," but because he cannot earn money during the time away from home. *Id.* He testified that he lived in a one-bedroom apartment but would move to a two-bedroom apartment if he had custody of Child. *Id.* at 23-24.

The trial court granted the petition to terminate Father's parental rights. Father filed a timely notice of appeal.

Father raises the following issues:

> A. Whether the trial court erred in terminating parental rights and/or abused its discretion as testimony offered did not establish by clear and convincing evidence the requirements of the Adoption Act of 1980, October 15, P.L. 934, No. 163, 1, [23 Pa.C.S.A.] Section 2511(a)(1), in that [Father] has not caused the child to be without essential parental care, control, or subsistence necessary because he has engaged in court-ordered services that have remedied the circumstances that originally gave rise to the child's placement.

Father's Br. at Statement of Questions Presented for Review (unnecessary capitalization omitted).

Father claims that CYS failed to meet its burden to prove by clear and convincing evidence that termination was proper under Section 2511(a)(1). He claims CYS "did nothing to enhance [F]ather's contact with this child in any effort to close out this case with custody to [Father]." Father's Br. at Summary of Argument. He noted that he lived in New York, and the agency did not facilitate weekend visits until October 2018. He further claims he has not had criminal charges since 2009 and that he would make new living arrangements if Child lived with him.

When reviewing an order terminating parental rights, we accept the findings of fact and credibility determinations of the trial court if the record supports them. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion. *Id.*

A party seeking termination of parental rights bears the burden of establishing grounds for termination by clear and convincing evidence. *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* at 728-729 (internal quotation marks and citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under Section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

Here, the trial court found termination proper under Sections 2511(a)(1) and 2511(b). Section 2511(a)(1) requires that the parent's conduct during the six months preceding the filing of the termination petition demonstrate either a settled intent to relinquish parental rights, or a refusal or failure to perform parental duties. 23 Pa.C.S.A. § 2511(a)(1); *In re Adoption of K.C.*, 199 A.3d 470, 473-74 (Pa.Super. 2018).

Here, the trial court found Jones' testimony credible, including that Father visited Child only six times in two years between Child's placement and the filing of the petition, that his phone calls were inconsistent, that he did not contact CYS or the foster parents to check on Child's well-being, and that he

did not perform any significant parental duties. Trial Court Opinion, filed Jan. 14, 2020, at 5-7 ("1925(a) Op."). It noted that Father did not present himself as a resource for Child when notified of Child's placement, and there was a large gap of time when he had not seen Child. *Id.* at 7. The court further found Father's testimony not credible, including his claim that he did not know Child was in placement until the death of Child's mother and his claim that he had seen Child more than ten times in the three-year span. *Id.*

The record supports the trial court's factual findings, and the court did not abuse its discretion in finding termination proper under Section 2511(a)(1). Father has had minimal visits and phone calls with Child, and has not made an effort to be a part of Child's life.

Father's question presented does not claim that the court erred in concluding, under Section 2511(b), that termination would best meet Child's developmental, physical, and emotional needs. He nonetheless makes an argument in his brief to that effect. He argues that "for [CYS] to assert that [Child] and [F]ather do not share a bond is absurd." Father's Br. at Conclusion. Father stated that he is not able to visit often, but when he does it is obvious he cares about Child and engages appropriately. He maintains that his bond should not be compared to the bond Child shares with foster parents, with whom Child has lived with since his infant years.

By not including the issue in his Statement of Questions Presented, Father waived the issue. In any event, the trial court did not err in determining that Section 2511(b) was satisfied.

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. **See** 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. **In re Adoption of R.J.S.**, 901 A.2d 502, 514 (Pa.Super. 2006). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa.Super. 2005). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." **Id.** Further, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **In re T.S.M.**, 71 A.3d 251, 268 (Pa. 2013).

Here, the trial court found termination would best meet Child's physical, emotional, and developmental needs. It reasoned that Child has assimilated into the extended foster family, and that the foster parents meet Child's physical needs, provide a comfortable home, and provide for Child's developmental and emotional needs. 1925(a) Op. at 9-10. Child had a parental bond with the foster parents. It further found that Father and Child did not share a parental bond, and, although Child was comfortable with Father and Father's interactions were appropriate, Father appeared to be a family friend, rather than sharing a parental bond. **Id.** at 10.

The record supports the trial court's factual findings and it did not abuse its discretion when it found termination proper under Section 2511(b). The evidence established Child had a bond with foster parents, and that no parental bond existed between Father and Child.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/01/2020